## Day v. Rains.

May 13, 1949.

Stephens & Stephens and Davis, Boehl, Viser & Marcus for appellant.

C. B. Upton, William L. Rose and Glenn W. Denham for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellee, a housewife, while at the country store of George Bunch and Polly Bunch, purchased a bottle of Pepsi-Cola. Detecting nothing peculiar about the appearance or the taste, she drank the entire contents of the bottle, after which she noticed a razor blade in the bottom of the bottle. She stated that the razor blade looked rusty and that there was some "stuff" sticking to it which had the appearance of a blade after it had been used. The blade was stuck to the bottom of the bottle and could not be dislodged by shaking. Appellee called Mrs. Bunch's attention to this and she in turn called Mr. Bunch's attention. A few minutes afterwards she became nauseated. Apparently she started for home and reached George Bunch's residence when she began to vomit. She was assisted into George Bunch's house where she remained about two hours. While there, Dr. A. A. Richardson was summoned, who gave her medicine and also viewed the bottle from which she had drunk. The next day Dr. R. D. Sanders was called to her home. He commenced to prescribe for her, and at the time of the trial, which was about seven months after the time she drank the Pepsi-Cola, he was yet treating her.

She instituted action against appellant. Trial was had and the jury returned a verdict of $2,000. From judgment upon that verdict this appeal is prosecuted.

Reversal is urged on the sole ground that the verdict is excessive.

Appellee was 50 years of age at the time of the trial. She was yet weak, sick at her stomach, unable to sleep properly, and complained of soreness in the stomach and bowels and general nervousness, all of which had appeared since drinking the contents of the Pepsi-Cola bottle. She stated that before drinking the Pepsi-Cola she weighed 133 pounds and that at that time she only weighed 115 pounds. She said she was unable to do her housework because of weakness resulting from the illness.

Dr. Richardson, who first attended appellee, stated that he saw the bottle at the home of George Bunch shortly after the contents had been drunk. He stated:

"Well, it seemed to be a razor blade lying in the bottom of the bottle, and it looked like it was rusty, corroded, and looked like after you had shaved, like the hair or beard and the skin particles was on the edges of it."

On cross-examination, when asked if he could account for the cause of appellee's sickness, he said:

"The only thing I could account for is that hair and epithelium had kind of fermented and become putrid, kind of, and it would make you sick."

In testifying concerning the condition of appellee at the time of his first visit, Dr. Sanders said:

"She was extremely nervous. Her blood pressure normal, showing she wasn't in shock, but she was cold and clammy and vomiting. She was sore in her abdomen, especially in the epigastrum, the upper part of the abdomen, on either side."

Dr. Sanders continued treating appellee. He made complete physical examination with blood analysis. X-rays revealed a fuzzy lining around her stomach, which he attributed to her upset condition. Thinking possibly that her condition might be due to or aggra-

vated by her menopause, he gave her hormone shots, to which she showed no reaction. Upon cross-examination he was questioned at length about the probability of this change affecting and contributing largely to appellee's condition.

Dr. Sanders stated that in his opinion her condition was caused directly from the poison drink in the Pepsi-Cola bottle. He was unable to state how long he thought the nervous and upset condition would last. He did say, however, that her condition was due to two things, first, a psychic condition resulting in nausea from having seen the rusty razor blade and the accumulations on the edge of the blade, and having drunk the Pepsi-Cola under such conditions, and, second, the toxic condition resulting directly from the drink.

Appellant insists that this being an ordinary customary foreign substance case, a verdict of $2,000 is so excessive as, at first blush, to appear to be the result of passion and prejudice. It is obvious that it would be utterly impossible to limit every case just to the customary foreign substance case. Certainly the result upon the physical condition, as well as the mental, would play a controlling part. The mere fact that verdicts in smaller amounts have been held excessive in other cases could not be controlling here, since in those cases cited by appellee the amount depended directly upon the extent of the injury resulting from drinking the foreign substance. We must look at the resultant injury. In ordinary tort actions for damages for injury to person if the injury was slight, certainly a verdict out of proportion to and not at all commensurate with the injury would be excessive, but if the injury were severe, a correspondingly larger verdict could be expected. The size of the verdict will be governed by the extent of the injury and accompanying incidents. Likewise, here it simply cannot be measured merely on the grounds that it was a customary foreign substance case. True, as testified by the doctor, there no doubt exists a psychic condition, but the evidence strongly indicates a toxic condition as well, resulting in soreness to the stomach, months of nauseating condition, with gagging and vomiting and a very noticeable loss in weight and inability to do customary housework.

The evidence here amply supports the verdict and we are not impressed with the thought that it is so excessive at first blush as to appear to be the result of passion and prejudice.

Wherefore, the judgment is affirmed.